UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOHN F. MILLER,

     Plaintiff,

v.                                  Case No: 6:16-cv-1239-Orl-28TBS

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## REPORT AND RECOMMENDATION

     Plaintiff, John F. Miller brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of Defendant, the Commissioner of the Social Security Administration denying his claim for disability insurance benefits under the Act. Upon a review of the record, I respectfully recommend that the Commissioner's final decision be **REVERSED** and the matter be **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g).

### Background[1]

     Plaintiff filed for disability insurance benefits on April 25, 2013, alleging disability commencing on March 14, 2011, due to a "fracture right calcaneus, pain disorder associated with fracture, depression, complex regional pain SYND/RSD lower extreme and disuse of osteopenia" (Tr. 174-180, 198). His claim was denied initially and on reconsideration (Tr. 69-105, 109-111) and he requested and received a hearing before an administrative law judge ("ALJ") (Tr.116-117, 32-68).

---

[1] These facts are taken from the Joint Memorandum filed by the parties (Doc. 15).

At the time of the hearing, Plaintiff was fifty years old (Tr. 174), with a general education diploma plus vocational education (Tr. 199), and past work experience as an electrician apprentice, electrician, and contractor (Tr. 44, 63-64, 199, 237).

On November 20, 2014, the ALJ issued a decision, finding Plaintiff not disabled (Tr. 10-31). On May 14, 2016, the Appeals Council of the Social Security Administration denied Plaintiff's request for review (Tr. 2-7). Consequently, the ALJ's decision is the Commissioner's final decision. Plaintiff brings this action after exhausting his available administrative remedies, the dispute is fully briefed, and has been referred to the undersigned for a report and recommendation.

## The ALJ's Decision

In determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date (Tr. 15). At step two, the ALJ determined that Plaintiff had the severe impairments of reflex sympathetic dystrophy, status post fracture of the calcaneus, depression, and pain disorder (20 CFR 404.1520(c)), but at step three, the

ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 15-17). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b) except:

> [H]e may stand/walk four hours and sit six hours in an eight-hour day; occasionally push/pull with the right lower extremity; frequently stoop; occasionally climb ramps and stairs, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; avoid all exposure to hazards; he is limited to tasks that can be learned in thirty days or less; no production pace rate; and only superficial, brief interaction with others.

(Tr. 17). Relying on testimony from a vocational expert, the ALJ found that Plaintiff was unable to perform any past relevant work (Tr. 26, 64-65) (step four), but could perform other work existing in significant numbers, such as the representative occupations of sorter, packing, and inspector (Tr. 26-27, 65-66) (step five). Therefore, the ALJ found Plaintiff was not disabled (Tr. 27).

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (*per curiam*); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

Plaintiff contends that the ALJ erred in formulating his RFC by failing to adequately weigh and consider the opinions of his treating physicians and a non-treating examiner, and in failing to properly evaluate his credibility.

Evaluation of Medical Opinion Evidence

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. Winschel, 631 F.3d at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the

evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. See 20 C.F.R. §§ 404.1527(c), 416.927(c). All opinions, including those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. See 20 C.F.R. §§ 404.1527, 416.927, and Winschel.

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). Good cause for disregarding an opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. Lewis, 125 F.3d at 1440. Regardless of whether controlling weight is appropriate, "the Commissioner 'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight." Hill v. Barnhart, 440 F. Supp. 2d 1269, 1273 (N.D. Ala. 2006) (citation omitted); see also Sullivan v. Comm'r. Soc. Sec., No. 6:12-cv-996-Orl-22, 2013 WL 4774526, at *7 (M.D. Fla. Sept. 4, 2013); Bumgardner v. Comm'r Soc. Sec., No. 6:12-cv-18-Orl-31, 2013 WL 610343, at *10 (M.D. Fla. Jan. 30, 2013); Bliven v. Comm'r Soc. Sec., No. 6:13-cv-1150-Orl-18, 2014 WL 4674201, at *3 (M.D. Fla. Sept. 18, 2014); Graves v. Comm'r Soc. Sec., No. 6:13-cv-522-Orl-22, 2014 WL 2968252, at *3 (M.D. Fla. June 30, 2014).

*Dr. Donnini*

Plaintiff treated with Richard Donnini, D. O., pain management specialist, since January 12, 2012 (Tr. 448-451). The ALJ noted this course of treatment in the administrative decision, stating:

The record shows the claimant was seen by Dr. Richard Donnini, D.O. for monthly visits from January 2012 through August 2014 (Exhibit 6F, 11F, 14F, 16F, I7F). The undersigned notes that several of these treatment notes indicated the claimant had a normal gait and station (Exhibit 6F). Dr. Donnini's assessments included closed fracture of the calcaneus, pain disorder with psychological factors and general medical condition, and reflex sympathetic dystrophy of the lower limb (Exhibit 6F). As of August 26, 2013, Dr. Donnini's diagnoses also included depressive disorder, not otherwise specified (Exhibit 11F). During the August 2013 exam, the claimant was noted to have a moderate-to-severely antalgic gait, with a normal station, and the claimant used a cane (Exhibit 11F). However, the claimant was oriented to person, place, time, and situation, his insight and judgment were normal, his mood and affect were normal and appropriate for the situation, and his language was intact for receptive and expressive functions (Exhibit 11F). The record shows the claimant also received spinal injections from Dr. Donnini in June and July 2013 (Exhibit 11F).

(Doc. 21). Missing from this summary is any reference to the treatment notes of Plaintiff's

August 11, 2014 visit, wherein Dr. Donnini opined:

This patient seen today for a disability assessment. He has constant severe pain in his right leg related to complex regional pain syndrome. He also has psychiatric issues for which he sees a psychiatrist every three weeks. His pain and functioning are both very limited. He can walk only 10 minutes, stand one hour, sit for one hour, bend occasionally, lift 20 pounds, rarely carry 20 pounds rarely [sic]. I think he probably could get through a full day of work, with some difficulty, but then would be incapacitated for at least 24 hours. He cannot sustain his activities o[n] a full-time basis. Based on his history and exam and review of records, stated to degree of medical certainty he is not capable of any sustained remunerative employment, which includes either sedentary or light work.

(Tr. 647-648). Plaintiff contends that the failure to explicitly discuss and weigh this opinion

is reversible error. The Commissioner seems to acknowledge the error but argues that it

is harmless in view of the substantial evidence supporting the ALJ's decision (Doc. 15 at

24-26). I agree with Plaintiff that the failure to discuss and weigh this opinion requires

reversal.

As noted, the ALJ must state with particularity the weight given to different medical opinions and the reasons for assigning weight. See Winschel, 631 F.3d at 1179. "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Id., quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir.1981). The failure of the ALJ to discuss or weigh Dr. Donnini's August 11 opinion runs afoul of this requirement.

While the Commissioner cites authority holding that failure to explicitly state the weight of an opinion may be harmless in certain situations, those cases are readily distinguishable. In Colon v. Colvin, 660 F. App'x 867 (11th Cir. 2016), the Eleventh Circuit held that an ALJ's error in not stating weight given to doctor's findings and in not mentioning findings of other doctors was harmless, "because those medical opinions *were consistent with the ALJ's conclusion* that Mr. Colon's depression was not a severe impairment and that he had no mental limitations that affected his RFC." 660 F. App'x at 870 (emphasis added). In Hunter v. Comm'r of Soc. Sec., 609 F. App'x 555, 558 (11th Cir. 2015), the failure to consider opinions of two doctors was deemed harmless where the doctors "did not offer opinions as to how Mr. Hunter's medical conditions would impact his ability to perform his past relevant work" and the failure "did not affect the administrative law judge's ultimate determination." 609 F. App'x at 558. By contrast, Dr. Donnini offered specific opinions as to the functional work-related abilities of Plaintiff,[2] and those opinions

---

[2] "He can walk only 10 minutes, stand one hour, sit for one hour, bend occasionally, lift 20 pounds, rarely carry 20 pounds rarely [sic]. I think he probably could get through a full day of work, with some difficulty, but then would be incapacitated for at least 24 hours. He cannot sustain his activities o[n] a full-time basis."

are inconsistent with the ALJ's RFC assessment. While the Commissioner cites to what she concludes is substantial evidence as a basis to implicitly discount Dr. Donnini's opinion, "[w]e cannot affirm based on a post hoc rationale that might have supported the ALJ's conclusion." Dempsey v. Comm'r of Soc. Sec., 454 F. App'x 729, 733 (11th Cir. 2011). This is especially true, considering that Dr. Donnini is acknowledged as Plaintiff's long-time treating specialist. Thus, I find that the ALJ erred in failing to consider and weigh the August 11 opinions of Dr. Donnini. Although this finding is dispositive, I address the remaining contentions, in the interests of completion.

*Dr. Flexman*

On January 4, 2012, Plaintiff presented to Jerry E. Flexman, Ph.D., for a psychological evaluation (Tr. 457-460). Dr. Flexman administered the Minnesota Multiphasic Personality Inventory ("MMPI") and the profile was considered valid and interpretable, although some tendencies to overreact were indicated (Tr. 459). Dr. Flexman noted that anxiety, irritability, and depression were indicated, along with some underlying anger and hostility (Id.). However, Plaintiff's speech and eye contact were good and Plaintiff was pleasant and compliant with adequate energy level (Id.). Dr. Flexman's impression was depression, not otherwise specified and pain disorder associated with both psychological factors and a general medical condition. Id. Plaintiff's global assessment of functioning over the past year was estimated to be 60 (Tr. 460).

On March 29, 2012, Nicole Leisgang, Psy.D., performed a psychological evaluation of Plaintiff for his workers' compensation claim (Tr. 364-370). She reviewed records detailing Plaintiff's physical and emotional functioning, conducted a clinical interview, and administered the MMPI-2 (Tr. 364-65). Dr. Leisgang opined the medical evidence and examination findings supported a finding of a depressive disorder, not

otherwise specified, but they did not support the existence of pain disorder associated with psychological factors and a general medical condition (Tr. 369). The doctor opined that Plaintiff's depressive disorder in itself was not work prohibitive because Plaintiff reported only occasional emotional difficulty, he was able to care for his home and person, he maintained social contact, and his short-term memory and attention and concentration skills were sufficient for work-related activities (Tr. 370). Next, as described by the ALJ:

> On April 20, 2012, Dr. Flexman reviewed Dr. Leisgang's psychological report findings (Exhibit 7F). Dr. Flexman stated that Dr. Leisgang did not show how she reached her conclusion that the claimant's emotional difficulties did not contribute to the development or maintenance of his pain. On February 13, 2013, Dr. Flexman also found issue with Dr. Moss' mental status evaluation, stating it was a subjective evaluation, and stated that the claimant's objective information obtained from a personality questionnaire, indicates that the claimant's psychological conditions affect his physical complaints (Exhibit 7F). Dr. Flexman found the claimant had marked psychological symptoms that interfered with his functioning on a consistent and daily basis in the workforce (Exhibit 7F). On April 18, 2014, Dr. Flexman submitted a mental residual functional capacity form, indicating the claimant had moderate to marked limitations in all mental functioning areas, as well as an extreme limitation in understanding complex job instructions (Exhibit 15F). However, Dr. Flexman goes on to indicate on this form that the claimant is capable of managing his own benefits (Exhibit 15F).

(Tr. 22). The ALJ weighed Dr. Flexman's opinions as follows:

> Dr. Flexman's opinions are given little weight. First, despite his statement to the contrary, Dr. Flexman's opinion is also based solely on the claimant's subjective reports of his symptoms and his opinion is not consistent with the overall evidence in the record. The record includes numerous psychological evaluations performed by various professionals to determine the extent of the claimant's mental functioning limitations. No other examiner has found the claimant to have the extreme

limitations provided by Dr. Flexman's opinions. Therefore, Dr. Flexman's opinions are given little weight.

(Tr. 22). Plaintiff challenges this finding, contending that the rationale offered by the ALJ is not supportable as (1) objective testing was performed; and (2) multiple providers opined that Plaintiff was precluded from performing full-time work due to his mental health restrictions. I am not persuaded.

A review of Dr. Flexman's reports substantially supports the ALJ's reasoning. In Dr. Flexman's April 2012 report, for example, the doctor cites solely to Plaintiff's statements regarding his symptoms as the evidence contradicting Dr. Leisgang's opinion (Tr. 462). Too, while certain testing was conducted, the CES Depression inventory is described as a "self rating" scale for depression (Tr. 459). This is, by definition, subjective. Although Plaintiff was administered the MMPI, an objective test, "tendencies to overact" were indicated when the test was administered by Dr. Flexman (Tr. 459). Importantly, Dr. Leisgang administered the MMPI-2 and reached different conclusions; agreeing with Dr. Flexman's impression of depression, not otherwise specified, but finding no support for the existence of pain disorder associated with psychological factors and a general medical condition (Tr. 369). Substantial evidence supports the ALJ's finding that the extreme limitations found by Dr. Flexman are also inconsistent with the overall evidence of record, including the opinions of psychological examiners Dr. Leisgang (Tr. 22, 369-70), Dr. Kramer (Tr. 23, 352), Dr. Jones (Tr. 23, 477), and Dr. Bonds (Tr. 24, 483).

Plaintiff's contention that "multiple providers" opined that he was "precluded from performing full-time work due to his mental health restrictions" is off the mark. Dr. Bonds opined that Plaintiff could not return to his former position of employment and that he had

"impaired ability" in certain work related areas (Tr. 283). This is not a finding that Plaintiff

was precluded from all work. Similarly, Dr. Jones finding that Plaintiff's condition "**may**

negatively impact his ability to sustain appropriate attention and concentration and to

maintain adequate persistence and pace in order to perform various work tasks" (Tr. 477-

emphasis added) is not a finding that all work is foreclosed. These opinions were given

some weight by the ALJ (Tr. 23, 24), who incorporated mental health restrictions into

Plaintiff's RFC assessment and found that Plaintiff could not return to his past work. As

for the opinion of Dr. Manges, the ALJ gave it "little weight" and substantiated this finding

with a supported rationale (Tr. 24). Thus, the ALJ did not err in his evaluation of Dr.

Flexman's opinions.

*Dr. Bonds*

Plaintiff contends that the ALJ failed to properly evaluate and credit the opinions

expressed by examiner Giovanni Bonds, PhD. As summarized by the ALJ:

> During the mental status examination, the claimant was alert
> and oriented to person, place, date and situation. He could
> state his name, age, birth date and Social Security number.
> He was able name the current president and the last three
> previous presidents. He said the months of the year backward
> correctly. On digit span, he recalled six digits forward and four
> digits backward. He correctly figured out how much change he
> should get back if he bought an item for $10.50 and gave the
> clerk $20, how much a dozen cookies would cost if they were
> priced three for $1.50 and how much an item would cost that
> was $600 and on sale for 25 percent off. His explanation of
> the saying "Don't judge a book by its cover" was "Don't judge
> people by the way they look." He explained that "Birds of a
> feather flock together" means "You usually hang around with
> people like you." The claimant was able to remember one of
> three items after a five-minute delay. Overall John maintained
> satisfactory attention and concentration. He did not need
> questions simplified or repeated for him. General cognitive
> abilities seem to be in the average range (Exhibit 10F). The
> examiner concluded that the claimant had not reached a
> treatment plateau, and should be able to improve his coping

skills and learn additional ways to manage his pain, both psychologically and physically (Exhibit 10F). Dr. Bonds also stated the claimant was severely depressed and his pain problem would be exacerbated by any attempts to return to work at this time due to his fear of re-injury (Exhibit 10F). Finally, the examiner stated that functional limitations solely due to the psychological conditions in this claim included an impaired ability to handle day-to-day work stress, to perform work tasks consistently, keeping a schedule and meeting expected productivity standards, and impaired ability to concentrate, pay attention to details and complete work assignments (Exhibit 10F). This opinion is given some weight. Although the examiner does provide specific limitations, these appear to be based on or supported by the examination's objective findings and clinical observations. Additionally, a determination that the claimant is unable to return to any work, and therefore disabled, is a determination reserved for the Commissioner.

(Tr. 23-24). Plaintiff contends that this analysis is "unclear." I disagree. As discussed above, the ALJ incorporated functional limitations of impairment into the RFC assessment while correctly noting that a determination that a claimant is disabled is for the Commissioner alone. I find no error in the evaluation of this opinion.

<u>Credibility</u>

A claimant may seek to establish that he has a disability through his own testimony regarding pain or other subjective symptoms. <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005). "In such a case, the claimant must show: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." <u>Id.</u> Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. <u>Jones v. Dep't of Health and Human</u>

Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. Foote, 67 F.3d at 1562.

Plaintiff contends that the ALJ's failure to assess the Dr. Donnini's disability opinion renders the credibility finding unsupported. He also objects to the ALJ's failure to consider or cite SSR 03-02p in the ALJ's decision.[3] The Commissioner contends that the ALJ's discussion of Plaintiff's subjective complaints regarding Reflex Sympathetic Dystrophy Syndrome in the written decision complies with SSR 03-02, even if the ALJ did not explicitly cite SSR 03-02, and argues that the credibility finding is otherwise supported. I find that the failure to consider and weigh the opinions of Dr. Donnini warrants reconsideration of the ALJ's credibility finding. In determining the credibility of an individual's statements, "the adjudicator must consider the entire case record." SSR 96-7p; See also SSR 16-3p ("Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms.").[4] As remand is appropriate in order to allow for consideration of the opinions of Dr. Donnini, the credibility finding should also be revisited and formulated anew. This will also provide the ALJ with an opportunity to directly address SSR 03-02.

### Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

---

[3] SSR 03-02 is a Policy Interpretation Ruling, Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome.

[4] SSR 96-7p has been superseded by SSR 16-3p, effective March 28, 2016. The ALJ's administrative decision was rendered in 2014, but the Appeals Council denied the request for review on May 14, 2016.

(1) The Commissioner's final decision in this case be **REVERSED and REMANDED** under sentence four of 42 U.S.C. §405(g) for further administrative proceedings consistent with the findings in this report.

(2) The Clerk be directed to enter judgment accordingly and **CLOSE** the file.

(3) Plaintiff be advised that the deadline to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) shall be thirty (30) days after Plaintiff receives notice from the Social Security Administration of the amount of past due benefits awarded.

(4) Plaintiff be directed that upon receipt of such notice, he shall promptly email Mr. Rudy and the OGC attorney who prepared the Commissioner's brief to advise that the notice has been received.

## Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on June 7, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record